**STATE of Missouri, Respondent,**

v.

**Tyrone ROBERTS, Appellant.**

**No. KCD 27608.**

Missouri Court of Appeals, Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer Denied Dec. 8, 1975.

Thomas Larson, Public Defender, E. L. Messina, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

The appellant (hereinafter referred to as "defendant") was tried by a jury upon a charge of first degree robbery, was convicted and sentenced to five years imprisonment. The defendant did not testify nor did he offer any evidence in the trial. The facts pertinent here, as disclosed by the state's evidence, may be summarized as follows:

Charles D. Burt and Kevin Furst were tending store at the Rhinocerous Leather Shop, 4509 Pennsylvania, Westport Square, Kansas City, Jackson County, Missouri, at approximately 2:30 p.m. on March 14, 1974, when the defendant entered the store with a "bundle" of money in his hand and asked to look at some leather pants. Furst accompanied the defendant to the lower level of the shop, where the leather pants were kept in a stockroom. Burt remained behind the sales counter on the upper level.

A minute or so later, another man entered the store, proceeded more than halfway down the stairs to the lower level, then returned to the upper level. When Burt asked if he could help this man, he pulled a gun and ordered Burt to accompany him downstairs. The gunman, later identified as Willard Carr, ordered Burt to lie face

down on the bathroom floor located in the lower level. When Furst saw what was going on, he followed suit. Carr ordered the two shopkeepers to remain there, and then one of the two men closed the door.

Four to ten minutes later, "Ace" Dickinson, the proprietor of a shop across the street, whose suspicions were aroused, entered the store and summoned the prostrated Burt and Furst. They went upstairs and immediately called the police, who arrived within four to five minutes. It was then that Burt and Furst noticed that approximately 25 leather coats and some $30.00 from the cash register were missing.

Mrs. Dickinson testified at trial that she had seen two Negro males come from the direction of the Leather Shop with arms loaded with coats, pass by the restaurant next to the Leather Shop and carry them down an alley. When the second male began to run, she suspected a holdup and alarmed her husband, who investigated.

Wesley Brown testified that he saw Roberts and another Negro male carry the coats down the alley and place them in the trunk of a white over red 1974 Cadillac with the Maryland license plate MR 1124. He gave this information to the police.

Witness Bowles, a fellow employee of Brown's testified that on March 14, 1974, at about 2:30 p.m., he was walking across Broadway toward the alley right in front of Wolfburger's restaurant when a large white over red automobile "brushed right by" him. It did not hit him because he "stepped aside".

The following events transpired between 4:00 and 5:00 p.m.:

Two detectives from the Kansas City Police Robbery Unit, Thurman and Luther, went to the scene of the crime, and in the process of their investigation they obtained the description and license number of the automobile. Before their arrival, Officer Todd of the Kansas City Police Department had attended the scene and had broadcast a pickup, describing the robbers and the car. While at the scene, Thurman and Luther received a broadcast dispatching them to 4006 Forest, where the car had been spotted. When Thurman and Luther arrived at this address, tactical unit crew policemen already had arrested Carr when he came out of the three-story apartment house at that address and headed for the car.

The two detectives questioned some children playing in the yard as to whether they knew where the people went who arrived in the red Cadillac. The children directed them to an apartment on the third floor. The detectives proceeded to the front entrance of the third floor apartment, knocked, identified themselves as police and demanded entry, to no avail, despite hearing indications that someone was inside. Luther went around the building and up the stairs to the back door of the apartment in order to prevent an escape. Through the large-windowed back door, he observed the defendant and a female companion standing in a dining area-hallway near a two-foot high pile of leather, suede and cashmere coats on hangers and with price tags attached. When Luther knocked and hollered "police officer", the defendant closed an inner door, thus obstructing Luther's view. Luther heard "scuffling and carrying-on" and ran down the stairs and started around the side of the building. It was then that he noticed the windows of the apartment being opened. Fearing that the evidence would be destroyed or disposed of, he advised a Sergeant Etzenhouser of what he observed and what had transpired. The decision was made to forcibly enter the apartment. Sergeant Etzenhouser and his men went to the back door, identified themselves as police officers several times, threatened to kick in the door if the occupants didn't open it, and then entered forcibly. Luther and Thurman were then admitted through the front door by the other officers and observed the defendant being placed under arrest in the dining area-hallway. He was arrested as he came out of one of the bedrooms by an officer who saw numerous leather coats strewn about. The

coats had been moved from the position in which Luther had originally observed them. However, when he looked into one of the bedrooms off the dining room-hallway area, he saw four or five coats on hangers and with tags attached lying on the bed; he found more under the bed, and stuffed in an open closet. In another bedroom off the dining area-hallway, he found more coats lying on the bed, under the bed and in a green trash bag in the closet. The coats were inventoried and returned to the owner.

Carr and the defendant were identified in a lineup at the police station thereafter by Burt, Furst and Brown.

Prior to trial, defense counsel filed a motion to suppress all physical evidence procured by the police at the apartment. A hearing on this motion was held, at which Detective Luther testified as to the circumstances of the seizure of the coats and a handgun in the apartment at the time of defendant's arrest. The motion to suppress was overruled and the case proceeded to trial. At the trial, the state offered as exhibits two leather coats recovered at the apartment, which were identified by witness Burt as among the coats taken in the robbery. These coats were received in evidence without objection from defense counsel. The handgun was not offered into evidence by the state. Counsel for defendant did assert as one of the grounds in the motion for a new trial the denial of the motion to suppress the physical evidence recovered in the apartment.

The defendant's sole point on this appeal is that the trial court erred in overruling his motion to suppress the evidence seized at the scene of his arrest because the search of the apartment was conducted in violation of his constitutional rights under the Fourth and Fourteenth Amendments.

■ To properly preserve any alleged error by reason of the admission of evidence allegedly obtained as a result of an illegal search and seizure, the objection must be raised at the earliest possible opportunity by motion to suppress, kept alive by timely objection to the introduction at trial, and preserved by the motion for a new trial. *State v. Fields*, 442 S.W.2d 30, 33[2, 3] (Mo. 1969); *State v. Hepperman*, 349 Mo. 681, 162 S.W.2d 878, 887[14, 15] (1942); *State v. O'Brien*, 252 S.W.2d 357, 359[2] (Mo.1952); *State v. Thompson*, 490 S.W.2d 50, 52[2] (Mo.1973), and cases cited therein.

■ While the defendant here filed a motion to suppress the physical evidence seized from the apartment at the time of his arrest and raises the point in his motion for a new trial, he did not, as previously noted, object at trial to the introduction of the two leather coats when they were offered by the state. To the contrary, when so offered, counsel for the defendant unequivocally stated "No objection". Under this state of the record, the defendant's contention cannot properly be reached on this appeal.

While not requested to do so, this court has, *sua sponte*, carefully reviewed the entire record to determine whether or not the "plain error" provision of Rule 27.20(c) should be applied. This review of the record and transcript of testimony has resulted in some definite conclusions.

■ The search and seizure here involved was proper under the facts and circumstances of this case and does not fall within any proscription of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); or *State v. Witherspoon*, 460 S.W.2d 281 (Mo.1970), cases cited by the defendant. Rather, the facts bring this case within the permissive warrantless search and seizure rules of "plain view" and "incidental to arrest", *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Gott*, 456 S.W.2d 38 (Mo.1970); *State v. Cobb*, 484 S.W.2d 196 (Mo. banc 1972); *State v. Hawkins*, 482 S.W.2d 477 (Mo.1972), and *State v. Henderson*, 510 S.W.2d 813 (Mo.App.1974).

Further, it is apparent that no manifest injustice or miscarriage of justice has resulted from the introduction of the two leather coats as evidence in this case. Such must appear before the provisions of Rule 27.20(c) may be properly invoked. *State v. Hurtt*, 509 S.W.2d 14, 15[2, 3] (Mo. 1974); *State v. Caffey*, 457 S.W.2d 657, 660[4, 5] (Mo.1970). The defendant's guilt of the crime charged was established by strong, believable and, indeed, overwhelming evidence.

The judgment is affirmed.

All concur.