STATE of Missouri, Respondent,

v.

Lloyd Charles ZIMPHER, Appellant.

No. KCD 28788.

Missouri Court of Appeals, Kansas City District.

May 31, 1977.

R. E. Moulthrop, Bethany, for appellant.

John C. Danforth, Atty. Gen., Donald A. Purdy, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

SWOFFORD, Presiding Judge.

The appellant (defendant) was tried before a jury on the charge of possession and control of marihuana in a quantity exceeding 35 grams (Section 195.200–1(1)(b) RSMo 1969, as amended Laws 1975). The jury returned a verdict of guilty and assessed the defendant's punishment at four years. After an unavailing motion for a new trial and allocution, the defendant was sentenced to four years under the supervision of the Department of Corrections, from which judgment he appeals. He asserts seven points or assignments of error, including three charging the trial court with error in overruling his motion for a directed verdict at the close of the state's case. The defendant did not testify and offered no evidence.

■ It should here be restated that the appellate review in this case is restricted to a consideration of the whole record and consideration of the facts in evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the state, and all evidence and inferences in conflict therewith are to be disregarded. *State v. Colthorp*, 437 S.W.2d 75, 76[1] (Mo.1969); *State v. Watson*, 350 S.W.2d 763, 766[1] (Mo.1961); *State v. Wishom*, 416 S.W.2d 921, 923[1] (Mo.1967).

When so viewed, this record, in pertinent part, discloses:

On October 29, 1974, Melvin Smith, the Sheriff of Harrison County, Missouri, filed a sworn complaint in the Magistrate Court of such county asking that a search warrant be issued permitting him to search a dwelling house located at 604 North 17th Street in Bethany, Harrison County, Missouri for certain controlled substances (as specifically described therein) including marihuana or *cannabis sativa*. In support of such sworn complaint, Sheriff Smith filed his own affidavit and that of Gary Baker, a member of

the Missouri State Highway Patrol, setting forth in specific detail the factual reasons for their belief that the premises was being used for the sale, use and distribution of various drugs within the statutory proscription of controlled substances.

In accordance with the complaint and supporting affidavits, Magistrate Loman, during the afternoon of October 29th, issued a "Search Warrant Authorizing Search for Controlled Substances" of the dwelling at 604 North 17th Street and placed it in the hands of Sheriff Smith for execution, return and inventory, as provided by law.

At approximately 3:20 a. m. the following morning, Sheriff Smith, Sergeant Baker and Corporal Stratton of the Highway Patrol, and other law enforcement officers, went to the premises on 17th Street for the purpose of execution of the warrant. Sheriff Smith testified that he chose the early morning hour to conduct the search because he felt there was a greater chance then to find the occupants of the house at home.

Sheriff Smith knocked on the door, identified himself as a peace officer with a search warrant and asked to be admitted. Receiving no response, he and another officer kicked the front door open and entered the house. Sheriff Smith found one Lyndal Lee Stewart in a bed in the front room. Highway Patrolmen Corporal Stratton and Sergeant Baker found the defendant and one Ronald Gail Johnson asleep in a bed in an adjoining bedroom and brought them into the front room and handcuffed them. All three were placed under arrest and read the *Miranda* warning. The Sheriff then inquired as to "Who was in charge of the house?" Johnson replied, "We all are, I guess. We make up money and pay the rent. I paid the rent the last time." The defendant then said, "That's right" and Stewart nodded his head in agreement.

During the ensuing search of the premises, Sergeant Baker found a bag of what appeared to be marihuana in a drawer of a chest of drawers located in the bedroom which was occupied by the defendant and Johnson and which was marked State's Exhibit No. 1. Corporal Stratton found another bag containing a wood and brass pipe, cigarette papers and a plant material in the drawer of a night stand beside the bed in which the defendant and Johnson had been sleeping. This was marked State's Exhibit 2.[1]

The chain of custody of State's Exhibits 1 and 2 is clearly shown and not seriously challenged. Highway Patrolmen Baker and Stratton turned these exhibits over to Sheriff Smith at the scene; the Sheriff turned them over to Sergeant Rhoades, evidence technician of the State Highway Patrol; Rhoades turned them over to Afton Ware, a forensic chemist employed by the Missouri Highway Patrol, who made certain examinations and tests of the material; upon the completion of these procedures, Ware returned the exhibits to Rhoades, who in turn delivered them back to Sheriff Smith; and Smith produced them at trial.

Afton Ware testified that he had worked as a forensic chemist with the Missouri Highway Patrol over 13 years. His duties were to make microscopic, chemical and physical analysis of specimens submitted to him for that purpose. In the course of his work he stated that he had made approximately 1300 examinations of marihuana, including marihuana seeds. Ware's qualifications were admitted by the defense.

Ware testified that in November of 1974, he made an examination of the contents of the bag marked State's Exhibit No. 1 (the bag found in the chest of drawers as previously related); that such contents weighed 35.0 grams; that the contents consisted of leafy material, hulls and seeds that had the physical appearance of marihuana; that microscopically the leafy material had a warty appearance, the presence of a "sisal of hairs" and secretions of resin. The seeds in

1. Other proscribed material was found in other parts of the house during the search and retained by the police officials. Under another search warrant executed the afternoon of October 30, 1974, a search of the yard uncovered other material. However, the nature and content of this material is not relevant to this appeal. The guilt or innocence of the defendant in this case rests upon State's Exhibits 1 and 2.

this bag had the appearance of miniature coconuts with characteristic veins on the surface and a general oval shape. When questioned about the process of sterilization of marihuana seeds, he testified that this is done by a heat process in the course of which the hulls come off and which process leaves the seeds clean and smooth. He gave his opinion that State's Exhibit No. 1 contained marihuana seeds and marihuana leaf particles.

Ware further testified that the bag marked State's Exhibit No. 2 (the bag found in the drawer of the bedside table, as previously related) was also examined by him. It contained a pipe, cigarette papers and also plant material. The plant material weighed 8.0 grams. His examination of this material also led him to the opinion that it was marihuana. Ware also performed various chemical tests on the plant material and hulls from each exhibit which further confirmed that such material was marihuana.

He only conducted microscopic examination of the seeds but did not do the germination test, which consists of either planting the seeds or placing them in a moist, warm container. He gave as his expert opinion that the seeds in State's Exhibit No. 1 were not sterile.

■ Prior to the trial, the defendant filed his motion to suppress the evidence of State's Exhibits No. 1 and No. 2 upon the grounds that the search warrant was improper and illegally issued, and that the search and seizure of this evidence, under the warrant, was unreasonable and illegal. An evidentiary hearing was held on this motion prior to trial. At this hearing, the state introduced the Magistrate's records as to the search warrant, as above described, and the testimony of Sheriff Smith. The defendant offered no evidence in support of his motion. The trial court overruled the motion and the defendant thereafter unsuccessfully asserted these same complaints in his motion for a new trial. The same points are raised on this appeal as Points I and II of the Points Relied Upon in his brief.

However, the record shows that when the state had its Exhibits No. 1 and No. 2, the fruits of the search and seizure so far as this case is concerned, marked and identified, no objection was lodged by the defense based upon these grounds. When these exhibits were offered into evidence (perhaps, as a matter of trial strategy), defense counsel stated: "I have no objection." In this posture of the record, the defendant's attack upon the validity of the search and seizure has not been preserved for review.

■ The rule is now firmly settled that where the validity of a search is questioned and the admission of the fruits of such search is sought to be suppressed in order to preserve any alleged error by reason of the admission of such evidence, the objection thereto must be raised at the earliest opportunity, kept alive by timely objection to the introduction at trial, and preserved by the motion for a new trial. Following the imperative force of previous decisions of the Supreme Court, this court so ruled in *State v. Roberts*, 530 S.W.2d 428, 431[1] (Mo.App. 1975). See also, *State v. Simone*, 416 S.W.2d 96, 100[11] (Mo.1967); *State v. Yowell*, 513 S.W.2d 397, 402[1] (Mo. banc 1974); *State v. Ealey*, 519 S.W.2d 314, 320[5, 6] (Mo.App.1975), and cases cited therein.

The defendant's failure to object and his agreement to the admission of State's Exhibits No. 1 and No. 2 precludes appellate review of his Points I and II, and they are ruled against him.

By Point III of defendant's assignments of error, he asserts that the court erred in overruling his motion for a directed verdict at the close of the state's evidence upon the ground of the state's alleged failure to prove that its Exhibits No. 1 and No. 2 contained proscribed marihuana which, by weight, exceeded 35 grams. This assignment is based upon the theory that the exception explicit in Section 195.010(20), RSMo 1969, as amended Laws 1975, excepts *sterile* marihuana *seeds* which are incapable of germination as proscribed substances.

Afton Ware, the forensic chemist (whose qualifications were admitted) very positive-

ly gave his expert opinion that the seeds in State's Exhibit No. 1 were not sterile (and thus within the exception) and was explicit in his reasons for this opinion, as above summarized. The weight of this testimony was for the jury. Since he positively testified that the combined weight of the marihuana found in Exhibits No. 1 and No. 2 was 43 grams, and in view of the fact that the defendant offered no evidence to the contrary, the state met its burden on this point.

Moreover, the defendant (and the state) lose sight of the provisions of Section 195.-180 RSMo 1969, a part of the Uniform Narcotics Drug Act, wherein it is provided:

"In any * * * action or proceeding brought for the enforcement of any provision of this law, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this law, *and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant.*" (Emphasis supplied)

■ The courts of this state have universally held that the burden of proof as to a statutory exception rests throughout with the defendant. *State v. Virdure*, 371 S.W.2d 196, 201–202[9] (Mo.1963); *State v. McAllister*, 468 S.W.2d 27, 29–30[4] (Mo. 1971); *State v. McCauley*, 522 S.W.2d 152, 154–155[5] (Mo.App.1975); *State v. Hubble*, 494 S.W.2d 358, 362[6] (Mo.App.1973). The defendant here has not met this burden and his Point III is ruled against him.

Defendant's Points IV, V and VI all deal basically with the same problem. He argues that the trial court erred in failing to sustain his motion for a directed verdict at the close of the state's case (IV and V) and in submitting the case to the jury under Instruction 5 (VI) for the reason that the state's evidence failed to make a submissible case that the defendant knowingly had over 35 grams of marihuana in his possession or under his control.

■ Both possession and knowledge are essential elements of the crime, but both may be proved circumstantially. *State v. Burns*, 457 S.W.2d 721, 724–725[1–3] (Mo.

1970). Actual physical possession is not necessary. Whatever difficulties heretofore existing with reference to controlled substances found on a "premises" as meeting the requirements of possession and control have been placed at rest in *State v. Wiley*, 522 S.W.2d 281, 292[20, 21] (Mo. banc 1975), where the court said:

"[20] In narcotics or controlled substance cases, the law has developed the policy that a person in exclusive control of the premises will be deemed to have possession and control of the substance found on the premises. The basis for this inference has recently been stated in *State v. Funk*, supra, at 360, [*State v. Funk*, 490 S.W.2d 354 (Mo.App.1973)] quoting from *People v. Nettles*, 23 Ill.2d 306, 178 N.E.2d 361, 363 (1961). ' * * * Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.'

[21] The same principle that a person may be deemed to have possession of the substance found on the premises may be applied even when the defendant does not have the exclusive control of the premises, since there may be joint control with the same consequences as if there were exclusive control. But, states *Funk*, supra, at 361, if there is joint control then there must be some 'further evidence or admission connecting the defendant with the illegal drugs.' "

There was ample evidence that the defendant, Johnson and Stewart were in joint control of the premises at 604 North 17th Street and that Stewart and the defendant shared the room in which the controlled substance was found. State's Exhibit No. 1 was found in the room in a "chest of drawers" presumably used for the storage of their personal effects, and State's Exhibit No. 2 was found in a "bedside stand" adjacent to the bed in which the defendant and Stewart were sleeping. These facts constitute "further evidence" (other than joint control of the premises) within the rule as stated in *Funk*, as approved and adopted in *Wiley*, supra.

■ As was said in *State v. Brickley*, 521 S.W.2d 16, 17[3] (Mo.App.1975):

"Actual possession is not necessary to sustain a conviction; constructive possession will suffice where, as here, other facts buttress an inference of defendant's knowledge of the presence of drugs. *One such incriminating fact is a defendant's access to an area in which drugs are found.* 56 A.L.R.3rd 946, et seq., *State v. Worley,* 375 S.W.2d 44[3] (Mo.1964)." (Emphasis supplied)

 "Conscious possession" of drugs can be and usually is supplied by circumstantial evidence. *State v. Davis,* 515 S.W.2d 773, 777[4, 5] (Mo.App.1974).

The fact that Stewart was also using the sleeping room and also had easy access to the marihuana does not destroy the applicability of the inference of knowledge of the defendant. *State v. Lockhart,* 501 S.W.2d 163, 164[1] (Mo.1973).

The factual issue of defendant's conscious or knowing possession of the drug was thus in the case and was properly submitted to the jury under Instruction No. 5, which is MAI–CR 14.10. The authorities cited by defendant in support of his Points IV, V and VI have been carefully reviewed and none of them are at war with the general principles of law as herein noted and followed. Each of them is factually distinguishable and inapposite to the facts of this case. Each case must be decided upon its own facts. Defendant's Points IV, V and VI are ruled against him.

Defendant's last point (VII) is presented without citation of authority. He asserts that the court erred in overruling his motion for a new trial because the jury's verdict was the result of speculation, conjecture and confusion, and of bias and prejudice against the defendant, and was not a fair expression on the part of all the jurors. In the argument portion of his brief, defendant restates his position that the state's evidence failed to establish that the defendant was shown to have sole and exclusive and knowing possession of marihuana in excess of 35 grams. These contentions have been fully covered above.

Additionally, the defendant complains that when the jury first returned and announced it had reached a verdict, the foreman handed the court three separate verdicts signed by the foreman, as shown by the record. Thereupon, the following appears:

"THE COURT: * * * All right, Mr. Foreman, you have returned two (sic) verdicts. The court cannot accept two (sic) verdicts, so I'll have to return it to you for further deliberation. You will retire."

Thereafter, the jury returned its verdict here under review.

It thus appears that the court properly refused to accept multiple verdicts, did not in any sense coerce the jury, and its action resulted in the return, in proper form, of a single verdict. Nothing in this trial incident appears that would lead to the unsupported conclusion reached by defendant, that the finding of guilt or innocence was influenced by the mistaken use of the jury forms supplied in the instructions. No prejudice is apparent and no misconduct by the jury is reflected in the record. Defendant's Point VII is ruled against him.

The judgment below is affirmed.

All concur.