**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James CHRISTOPHER,
Defendant-Appellant.**

**No. 14458.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 26, 1986.

**436**

Donald R. Cooley, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant James Christopher guilty on two counts of receiving stolen property, § 570.080,[1] and he was sentenced to one year confinement on each count, the sentences to run consecutively. Defendant appeals.

Defendant's sole point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, for the reason that the state failed to prove that defendant "was a dealer in vehicles or parts on the dates of the charged offenses."

The indictment contained three counts but Count I was dismissed and the case proceeded to trial on Count II and Count III. Both Count II and Count III charged the defendant with committing the class C felony of receiving stolen property in violation of § 570.080.

In addition to its formal portions, Count II alleged that "between the dates of March 17, 1984 and March 18, 1984, in the County of Howell, State of Missouri, the defendant, being in the business of buying and selling vehicles and vehicle parts and with the purpose to deprive the owner of a 1982 Chevrolet Truck, disposed of all or part of said vehicle knowing or believing that it had been stolen."

Similarly Count III alleged that "on or about the 8th day of April, 1984, in the County of Howell, State of Missouri, the defendant, being in the business of buying and selling vehicles and vehicle parts and with the purpose to deprive the owner of a 1984 Chevrolet Truck, disposed of all or part of said vehicle knowing or believing that it had been stolen."

Section 570.080 reads, in pertinent part:

"1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen.

2. ...

3. Receiving stolen property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, or the person receiving the property is a dealer in goods of the type in question, in which cases receiving stolen property is a class C felony."

Section 570.010(6) reads, in pertinent part:

"As used in this chapter:

.    .    .    .    .

6. 'Dealer' means a person in the business of buying and selling goods."

In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). All evidence unfavorable to the state must be disregarded. *State v.*

1. All references to statutes are to RSMo 1978, V.A.M.S.

*Summers,* 506 S.W.2d 67, 69[1] (Mo.App. 1974).

Defendant does not challenge the sufficiency of the evidence with respect to the various elements enumerated in § 570.080.-1, supra. Defendant argues, however, that the evidence failed to show that defendant "is a dealer in goods of the type in question." § 570.080.3, supra. Defendant's brief states: "It is [defendant's] position that there is no evidence at all to prove that he was, as charged in the indictment, in the business of buying and selling vehicles and vehicle parts, either in March or April 1984, as set out in Counts II and III of the indictment."

With respect to Count II, the state presented the following evidence: In February or March 1984, a blue and silver 1982 Chevrolet S–10 pickup truck was stolen in Springfield from its owner, Paul Dock. On some date between March 15 and March 20, 1984, Bobby Sloan bought the cab and the bed of that vehicle from defendant for an agreed price of $400. The defendant delivered those parts to Sloan a day or two after the two men had made the initial agreement for the sale. The delivery was made at Sloan's place of business, an automobile garage, in West Plains. Defendant transported the bed to Sloan in the bed of another pickup. At the same time the cab was delivered to Sloan on the back of a wrecker driven by defendant's companion, Charlie Watson. Watson was present when defendant and Sloan made the initial arrangements for the purchase.

The vehicle identification numbers in the cab had been "taken off" and the number on the engine had been "punched out." Sloan moved the stolen articles to his mother's farm where they were later seized by the highway patrol and identified by Paul Dock as portions of the vehicle stolen from him.

With respect to Count III, the state presented the following evidence: In the "first part of 1984," a 1984 Chevrolet pickup was stolen in Sikeston from its owner, Ronnie Smith. Smith had paid $12,000 for the vehicle and it had 3,000 miles on it at the time of the theft. In April 1984 Bobby Sloan had a burned truck "which needed the majority of the parts" and Sloan asked defendant "if he could get me something that had the parts I could use" and defendant said, "Yes, I know of a good truck." The two men agreed upon a price of $1,500.

Within a week or so defendant delivered to Sloan a 1984 Chevrolet pickup, later identified by Ronnie Smith as the stolen vehicle. The delivery took place at midnight and Sloan gave defendant $1,500 in cash. Sloan was not given a certificate of title or bill of sale. Sloan testified that the stolen vehicle was worth $8,000 when he "bought" it from defendant. The vehicle identification numbers were intact on the stolen vehicle when the highway patrol recovered it from the residence of a relative of Sloan.

In addition to the vehicles mentioned respectively in Counts II and III, Sloan purchased two other trucks from defendant. According to Sloan in the early part of 1983 Sloan bought a "one ton truck" from defendant. Sloan said it was "a legal truck which came out of Louisiana. Defendant sold this truck to me and he delivered to me a Louisiana title."

Sloan also testified that prior to Sloan's acquisition of the truck named in Count II, he bought "a 1982 Chevy pickup" from defendant, "which was legal, which I still have, which was a legal truck."

During direct examination of Sloan by prosecuting attorney Truman Wiles, the following occurred.

Q. Now, in the times that you had contact with the defendant, did the defendant ever identify himself to you and the fact that he dealt in cars and car parts or that he had any type of salvage yard?

[Defense counsel]: Object to this, no foundation as to when that statement would have occurred, object on that basis.

THE COURT: Sustained. I will permit the question if you will establish that.

Q. (By Mr. Wiles): Can you say when it occurred, when he would have told you that, made any statements to you of that nature?

A. The statement that he would have made concerning the fact that he had a salvage or dealt with cars would have been when I purchased cars off of him.

Sloan also testified that during his conversation with defendant, which culminated in the purchase of the cab and bed of the S–10 Chevrolet pickup truck stolen from Paul Dock, "I said something about I needed parts for a S–10 pickup and [defendant] said something to the effect that he had some and I asked him if he would sell them and asked him how much he wanted for them. We kicked that around for a little while and he said, 'How much will you give for them,' and I said, 'No more than I have to,' and we agreed on a price of $400."

Sloan also testified that when he dealt with defendant concerning the purchase of the "legal truck which came out of Louisiana," "I did not know exactly what kind of business [defendant] had, other than he dealt with wrecked vehicles and fixed them." Sloan also testified that "in the middle of 1983" defendant told Sloan that defendant "had a place of business in Summersville close to his father's place, had a salvage and he sold parts from there."

Defendant had four sales transactions, two lawful and two unlawful, with Sloan. Each involved a pickup truck. A jury could reasonably find that these trucks were the "cars" to which Sloan was referring when he said that defendant had told him that "he had a salvage or dealt with cars." Such statements were made, said Sloan, when Sloan "purchased cars off of him." In addition to the statements attributed to the defendant, there was the corroborative evidence that defendant, over the course of a few months, delivered four pickup trucks to Sloan. One was of the type which Sloan needed to repair a burned pickup.

The verdict directing instructions, respectively submitting Counts II and III, required the jury to find, among other things, that defendant "was in the business of buying and selling goods of the type described in paragraph First." Paragraph First of the instruction submitting Count II mentioned "a part of a 1982 Chevrolet truck." Paragraph First of the instruction submitting Count III described "all or part of a 1984 Chevrolet truck." The evidence previously outlined was sufficient to support the required findings. The jury was entitled to find that the defendant was a person in the business of buying and selling goods of the type in question, that is, vehicles and vehicle parts. Cf. *United States v. Perkins*, 633 F.2d 856, 859–60[3, 4] (8th Cir.1981). Defendant's point has no merit.

The judgment is affirmed.

PREWITT, P.J., and MAUS, J., concur.

HOGAN, J., not participating.