STATE of Missouri,
Plaintiff-Respondent,

v.

Charles PACCHETTI,
Defendant-Appellant.

No. 14594.

Missouri Court of Appeals,
Southern District,
Division Two.

April 14, 1987.

Motion for Rehearing or To Transfer
Denied May 3, 1987.

Application to Transfer Denied
June 16, 1987.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM.

A jury found defendant guilty on all three counts of the information. Count I charged manslaughter (§ 565.005, RSMo 1978), Count II charged distribution of cocaine, a controlled substance (§ 195.020),[1] and Count III charged possession of more than 35 grams of marijuana, a controlled substance (§ 195.020). The information also charged, and the trial court found, that defendant was a prior offender and a persistent offender. Defendant was sentenced to 15 years' imprisonment on Count I, life imprisonment on Count II, and ten years' imprisonment on Count III, the sentences to run consecutively. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support his conviction of manslaughter because "there was insufficient evidence as a matter of law to conclude that the deceased [Derek

---

**1.** Unless otherwise indicated all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Anderson] died by any criminal agency or act of the defendant."

In determining the validity of defendant's first point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. *State v. Christopher*, 720 S.W.2d 435, 436 (Mo.App.1986).

Section 565.005, RSMo 1978, which was in effect at the time of the instant offense, read:

"Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter."

In the early evening of June 29, 1984, Derek Anderson, 16, died as a result of an intravenous overdose of cocaine. In general, the state's manslaughter theory was that defendant provided Derek with the cocaine which caused his death within an hour or so after it was injected into his bloodstream. Defendant is an adult whose age is not shown, but one of his prior felony convictions occurred in 1963.

Derek and his stepbrother Larry Pothoff were guests of the defendant and his family at defendant's home in Osage Beach. On June 29, between 4:00 p.m. and 6:00 p.m. Derek and Larry watched movies in the bedroom of Karen Nichols, defendant's stepdaughter. In addition to Karen, other teenagers present included Kim Larkin and defendant's stepchildren Donnie Nichols and Debbie Nichols.

Larry testified that defendant, whose bedroom was down the hall, came into Karen's room and asked to speak with Derek. Derek went with defendant to defendant's room and several of the other teenagers went there too. Defendant showed Derek some guns. After Karen and Kim left the room defendant asked Derek, "Have you ever heard of anybody opening on cocaine?" Derek and defendant were sitting next to each other on defendant's bed. Derek said, "No." Defendant picked up a blue plastic bottle from a "little counter"

next to his bed. Defendant said, "This stuff is almost pure. It doesn't do anything to me." Defendant then told Larry, Donnie and Debbie to leave the room.

The group of teenagers intended to go out for dinner. During the course of several minutes, while they were waiting outside for Derek to come, they honked the horn to summon Derek. Twice defendant opened an upstairs window and told them, "Derek is in the bathroom. He will be right down." After a few more minutes, defendant opened the window and yelled to the teenagers below, "Derek has had an overdose. Call an ambulance."

Larry ran inside and upstairs. He found Derek lying on the floor, face up, with his eyes open, not moving and not saying anything. Defendant was giving Derek mouth-to-mouth resuscitation. The blue bottle was lying at Derek's feet.

Kim arrived upstairs shortly after Larry did. By this time Larry had taken over from defendant the task of attempting to resuscitate Derek. Kim testified that while defendant was standing over Derek defendant said repeatedly, "I shouldn't have given it to him."

Derek, who never recovered consciousness, was taken to the emergency room at the Lake of the Ozarks General Hospital where, after unavailing medical efforts, he was pronounced dead. There was medical testimony that death was due to an intravenous overdose of cocaine. There were two puncture sites on the inner aspect of Derek's right arm showing intravenous injections. Derek was right handed and there was testimony that it would be difficult to give an injection with just one hand and that a right handed person ordinarily would inject the left arm if he were injecting himself.

Defendant, who suffered from back problems, used injectable Nubain for pain, and there was a supply of hypodermic needles in his bedroom. Several of the teenagers testified that before Derek accompanied defendant to the latter's bedroom "there was nothing abnormal about Derek."

On July 2, 1984, after obtaining a search warrant, several officers searched defendant's house. Under defendant's bed they found a canister containing 33.8 grams of marijuana. This canister was within reach of defendant's side of the bed which he shared with his wife. On a shelf on defendant's side of the bed, they found a plastic bag containing 4.1 grams of marijuana.

From the foregoing evidence the jury was entitled to find that defendant possessed cocaine, that defendant knew it was cocaine and was aware of its nature, that defendant asked Derek if Derek had heard of anyone "opening on cocaine," that Derek had not so heard, that defendant suggested that the other teenagers leave the room, that while defendant and Derek were alone in the room cocaine was injected into Derek's bloodstream, that defendant performed the injection or assisted Derek in doing so, that defendant "gave" the cocaine to Derek, and that the amount injected was an overdose which caused Derek's death almost immediately.

In attacking the sufficiency of the evidence, defendant's brief makes the following arguments: "The blue bottle was never found"; "the circumstances were inconclusive as to the bottle's contents"; "Larry was the only one to see this bottle, although there were other witnesses present"; no witness, other than Kim, heard defendant make the statement "I shouldn't have given it to him."

The foregoing arguments, in effect, constitute claims of conflicts in the evidence. Such conflicts were for the resolution of the jury, but they do not destroy the submissibility of the state's case.

Defendant's brief also argues that the evidence supports the inference "that Derek, with his well-chronicled history of drug abuse, injected, sniffed or ingested cocaine which was his own, not that which was allegedly Pacchetti's." There was no showing that there was any cocaine in the bedroom other than that contained in the blue bottle.

■ This court holds that the evidence was not insufficient for any of the reasons advanced by defendant. Defendant's first point has no merit.

Defendant's second point is that the conviction on Count I, manslaughter, and the conviction on Count II, delivery of cocaine, a controlled substance, may not co-exist. He advances three independent grounds: (a) sentencing him on both counts violates his rights under the double jeopardy provisions of the Fifth and Fourteenth Amendments of the U.S. Constitution and Art. I, § 19 of the Missouri Constitution; (b) the Count II offense is included in the Count I offense because the Count II offense was established by proof of the same or less than all of the facts required to establish the commission of the Count I offense and § 556.041(1) permits only one of the two convictions to stand; (c) the conviction on Count II and the punishment imposed for it contravene § 556.041(4).

In *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), the Court said:

"The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense'. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). Where consecutive sentences are imposed *at a single criminal trial*, the role of the constitutional guarantee is limited to assuring that the court does not exceed its *legislative authorization* by imposing multiple punishments for the same offense." (Emphasis added.)

In *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), at 104 S.Ct. pp. 2540–2541 the court said:

"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the

legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger*, 5 Wheat, 76, 93, 5 L.Ed. 37 (1820), the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Also at 104 S.Ct. p. 2541, fn. 8, the court said:

"In the federal courts the test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), ordinarily determines whether the crimes are indeed separate and whether cumulative punishments may be imposed. See *Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981); *Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980). As should be evident from our decision in *Missouri v. Hunter* [459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)], however, the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."

Accordingly, if the legislature authorized the co-existence of the conviction on Count I and the conviction on Count II, and their cumulative punishments, and this court in its discussion of grounds (b) and (c) so holds, there is no violation of defendant's double jeopardy rights under the U.S. Constitution.

■ Defendant's rights under Art. I, § 19 of the Missouri Constitution have not been violated. In *State ex rel. Westfall v. Campbell*, 637 S.W.2d 94, 96 (Mo.App. 1982), the court said:

"Art. I, § 19 prohibits the state from placing a person 'again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury.' This provision only applies 'where there has been an acquittal of the defendant by a jury.' *Kansas City v. Henderson*, 468 S.W.2d 48, 52 (Mo.1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 570, 30 L.Ed.2d 557 (1971). Here, defendant has been convicted by a jury, so the double jeopardy provision of our constitution does not apply."

Ground (a) has no merit.

Of ground (b): Section 556.041 reads, in pertinent part:

"When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

(1) One offense is included in the other, as defined in section 556.046; or ..."

Section 556.046 reads, in pertinent part:

"1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or ..."

The conviction on Count II was based on a violation of § 195.020 which reads, in pertinent part: "1. It is unlawful for any person to ... distribute ... any controlled ... substance ..." [the statute then sets forth exceptions inapplicable here.] "Distribute," as used in that statute, means, under the instant facts, "to deliver." § 195.010(13). "Deliver" includes the actual, constructive or attempted transfer from one person to another of a controlled substance § 195.010(8).

Proof of the delivery of the cocaine, a controlled substance, § 195.010(6), by defendant to Derek was established by proof of the same *facts* which established the commission of the manslaughter, although the latter required the additional fact that Derek's death resulted from that delivery. If, on the instant record, the state had failed to prove the facts underlying Count II, that failure would have undermined the conviction on Count I. The state, however, did prove the facts underlying Count II. There was no evidentiary deficiency with

respect to the conviction on Count I or on Count II.

The first sentence of § 556.041 permitted the prosecution of both Count I [2] and Count II. The issue now is, does § 556.041(1) invalidate the co-existence of those convictions.

Section 556.041(1) proscribes the conviction of more than one offense if one offense is included in the other, "as defined in § 556.046." The definition of "lesser included offense," as contained in § 556.-046.1(1), is, as stated in *State v. McCrary*, 621 S.W.2d 266, 269 (Mo. banc 1981), a codification of the *Blockburger* definition of lesser included offense.

The *Blockburger* test is, "[W]here the same act or transaction constitutes a violation of two distinct *statutory provisions*, the test to be applied to determine whether there are two offenses or only one is whether each *provision* requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). (Emphasis added.)

■ Section 565.005 RSMo 1978, on which the Count I conviction was based, required proof of, among other things, "killing of a human being." Section 195.-020, on which the conviction on Count II was based, requires no such proof. Section 195.020 does require, however, proof of distribution of a controlled substance, and no such proof is required by § 565.005 RSMo 1978. Accordingly, the *Blockburger* test is not satisfied, the definition of included offense found in § 556.046.1(1) is not met, and defendant receives no benefit from § 556.041(1). As stated in *State v. Gobble*, 675 S.W.2d 944, 948 (Mo.App.1984):

"Defendant would have us make the determination of whether an offense is lesser-included depend solely upon the *evidence* in each case. Rather, attention focuses first upon the elements required by the *statutes* proscribing the offenses.

*State v. Van Doren*, 657 S.W.2d 708, 715 (Mo.App.1983)." (Emphasis added.)

Similarly, in *State v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the court said, at 100 S.Ct. p. 2265:

"We recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. Thus we stated that if ' "each *statute* requires proof of an additional fact which the other does not," *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871),' the offenses are not the same under the *Blockburger* test. 432 U.S., at 166, 97 S.Ct., at 2226 (emphasis supplied); *Iannelli v. United States*, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975)."

Ground (b) has no merit.

Of ground (c): Section 556.041 reads, in pertinent part:

"When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

.     .     .     .     .

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses."

In at least six cases a defendant, convicted of multiple offenses committed contemporaneously, has sought to invoke § 556.-041(4). *State v. Olson*, 636 S.W.2d 318 (Mo. banc 1982) (rape, sodomy, assault); *State v. Whitehead*, 675 S.W.2d 939 (Mo.App.1984) (assault, unlawful use of weapon); *State v. Sherrard*, 659 S.W.2d 582 (Mo.App.1983) (rape, sodomy); *State v. Van Doren*, 657 S.W.2d 708 (Mo.App.1983) (rape, sodomy, burglary); *State v. Johnson*, 632 S.W.2d 506 (Mo.App.1982) (kidnapping, rape, sodomy); *State v. Stewart*, 615

---

**2.** See, generally, Anno. 32 A.L.R.3d 589 (Homicide—Providing Drugs or Liquor). At p. 601 of that annotation are cases where prosecutions were conducted under the felony murder doctrine. Of course it is unnecessary to consider whether the instant record would have justified a charge of a higher degree of homicide.

S.W.2d 600 (Mo.App.1981) (kidnapping, rape). In each case the attempt was unsuccessful.

In *Sherrard* defendant raped a woman, forced her to commit an act of oral sodomy, abetted one Garrett in raping her, and abetted Garrett in forcing her to commit an act of oral sodomy with Garrett. Convictions for all four offenses were permitted to stand. The court said, at p. 587: "The statutes do not define the two rapes as a continuous course of conduct which constitutes a single offense. The same can be said with reference to the two acts of sodomy." The offenses were all committed during the course of one evening.

Certain offenses, by their nature, may involve "a continuing course of conduct." Examples include false imprisonment, § 565.130, bigamy, § 568.010.1(2), non-support, § 568.040, operation of a house of prostitution, § 567.010(1)(d).

Although the instant offenses of manslaughter and distribution of cocaine arose out of the same incident, the manslaughter statute (§ 565.005 RSMo 1978) does not define manslaughter as a continuing course of conduct. Similarly, the statute proscribing distribution of a controlled substance (§ 195.020) does not define that offense as a continuing course of conduct. There was only one distribution here, not a continuing course of distributions. Ground (c) has no merit and the same is true of defendant's second point.

Defendant's third point is that the trial court erred in failing to sustain his motion to suppress certain evidence obtained on July 2, 1984, pursuant to a search warrant, because the warrant was improvidently granted. Defendant challenges the issuance of the warrant on these grounds: "Under the totality of the circumstances, probable cause did not exist *because the affidavits were uncorroborated hearsay of a police officer* [and?] *untested as to the truth and veracity of the affiants.*"

▆ Defendant's motion to suppress the evidence obtained pursuant to the warrant set forth nine specific grounds but it did not set forth the ground, italicized above, on which defendant predicates his third point. Some of the items which were seized under the warrant were offered into evidence by the state during the trial. When those items were offered, defendant failed to object to any of them on the ground now asserted in his third point. Such failure prevents the denial of his motion to suppress from being preserved for appellate review. *State v. Ethelbert*, 611 S.W.2d 379, 381[5] (Mo.App.1981). Gratuitous review of defendant's third point, pursuant to Rule 30.20, discloses no plain error.

The application for the search warrant was filed July 2, 1984, at 5:00 p.m., and was submitted and verified by Lt. Joe Vaughn of the Camden County Sheriff's Department. The application sought a warrant authorizing the search of the Pacchetti premises, for the purpose of seizing a small blue bottle "believed to contain fingerprints and/or remnants of controlled substance in or on it and any other controlled substance" located on the Pacchetti premises. The application further stated that on June 29, 1984, Derek Anderson collapsed on the premises and died shortly thereafter as a result of an overdose of cocaine; that the applicant believed that the cocaine was provided to the decedent by Charles Pacchetti and that it was originally contained in a small blue bottle described in the attached affidavits and that the bottle would constitute evidence of the commission of manslaughter. Accompanying Vaughn's application were the affidavits of Larry Pothoff and Kim Larkin. Sheriff John W. Page, who was also a notary public, attached his jurat to those affidavits.

The affidavits of Larry Pothoff and Kim Larkin set forth in considerable detail the events of June 29, 1984, including those experienced by Larry and Kim respectively as discussed under defendant's first point. Defendant's argument under his third point makes no mention of the Missouri Constitution, nor does he claim that the state failed to meet the burden imposed upon it by § 542.296.6. Defendant seems to rest his argument on Fourth Amendment grounds.

In *United States v. Arenal*, 768 F.2d 263, 266[1] (8th Cir.1985), the court said:

"Under the standard established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the task of a magistrate issuing a search warrant is to determine whether, in light of all the circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for … conclud[ing]" that probable cause existed.' "

In *United States v. Henry*, 763 F.2d 329, 331[5] (8th Cir.1985), the court said:

"A search warrant is invalid and the fruits of the search excluded only if the defendant establishes by a preponderance of the evidence that the affiant knowingly, intentionally, or with reckless disregard for the truth included a false statement, and that with the affidavit's false material set aside, the remaining information is insufficient to establish probable cause."

Defendant made no showing, and indeed does not claim, that Larry or Kim included false statements in their respective affidavits. Defendant seems to argue that portions of the affidavits were hearsay but that argument overlooks the fact that hearsay may be a proper basis to establish probable cause if there is substantial basis for crediting the hearsay. *State v. Ambrosio*, 632 S.W.2d 262, 265[3] (Mo.App.1982).

In *United States v. Henry*, supra, at 331[7], the court said:

"Hearsay evidence, however, is a permissible basis for a finding of probable cause under Fed.R.Crim.P. 41(c)(1). Certainly the district court 'had a "substantial basis for … conclud[ing]" that a search warrant would uncover evidence of wrongdoing, the Fourth Amendment requires no more.' *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)."

The application of Lt. Vaughn, accompanied by the affidavits of Larry Pothoff and Kim Larkin, gave the judge who issued the search warrant a substantial basis for concluding that the warrant would uncover evidence of wrongdoing. Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred in receiving into evidence state's Exhibits 19 and 20. Exhibit 19 was a canister containing marijuana which was found underneath the bed in defendant's bedroom. This exhibit was found approximately a foot to 18 inches under the bed, but on defendant's side of the bed which he jointly occupied with his wife. There was evidence that Exhibit 19 was found directly under the spot where defendant often sat on his side of the bed. The canister was within defendant's reach when he occupied the bed. As a result of a physical disability, defendant's mobility was restricted and he rarely left the room.

Exhibit 20 was a bag of marijuana found on a shelf, in a bowl behind the telephone, about three feet from defendant's side of the bed. The shelf contained a variety of defendant's medications and supplies. When the two exhibits were offered into evidence, the only objection made by defendant's counsel was "there has been no connection legally between Exhibits 19 and 20 and this defendant."

■■■■ Actual possession is not necessary to sustain a conviction for possession of a controlled substance. Constructive possession will suffice where the evidence supports an inference of defendant's knowledge of the presence of the substance. *State v. Zimpher*, 552 S.W.2d 345, 350[6] (Mo.App.1977). A person may be deemed to have possession of the substance found on the premises even when he does not have exclusive control of the premises, because there may be joint control, with the same consequences as if there were exclusive control. If the control is joint, however, there must be some further evidence or admission connecting the defendant with the substance. *State v. Wylie*, 522 S.W.2d 281, 292[21] (Mo. banc 1975). Conscious possession of drugs may be supplied by circumstantial evidence. *State v. Davis*, 515 S.W.2d 773, 777 (Mo. App.1974).

An incriminating fact is defendant's access to the area in which the drugs were found. *State v. Brickley*, 521 S.W.2d 16, 17[3] (Mo.App.1975). The fact that defendant's wife also used the bedroom and had access to the marijuana does not destroy the inference of knowledge of the defendant. *State v. Lockhart*, 501 S.W.2d 163, 164[1] (Mo.1973). *State v. Zimpher*, supra, at 350[8]. In *State v. Zimpher*, marijuana was found in a chest of drawers and a pipe, cigarette papers and marijuana were found in a bedside stand adjacent to the bed in which defendant and one Lyndal Stewart slept. There was evidence that defendant and Stewart were in joint control of the premises and that they shared the room in which the controlled substance was found. Those facts were held to constitute "further evidence connecting the defendant with the illegal drugs."

This court holds that the trial court did not err in overruling defendant's objection to state's Exhibits 19 and 20. Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in failing to give Instruction B, tendered by defendant. Instruction B, tendered with respect to Count II, would have submitted the offense of possession of cocaine. Defendant argues that possession of cocaine is a lesser included offense of the offense of distributing cocaine and that the evidence supported the giving of Instruction B.

A lesser included offense, as applicable here, is one which is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 556.046.1(1). .Section 556.046.2 reads: "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

It is true that the state's evidence showed that defendant was in possession of cocaine during the short period he was alone with Derek on June 29. As discussed in connection with defendant's second point, a person "delivers," and thus "distributes," cocaine if he makes an actual, constructive or attempted transfer of it to another person. The tragic death of this sixteen-year-old boy is irrefutable evidence of an actual transfer. There was no evidence to the contrary, that is, there was no evidence of mere possession of cocaine by defendant coupled with lack of transfer. The trial court properly refused to give Instruction B for the reason that there was no basis for a verdict acquitting defendant of the offense of distribution of cocaine and convicting him of possessing it. *State v. Morton*, 684 S.W.2d 601, 611[20] (Mo.App. 1985) and *State v. Arnall*, 603 S.W.2d 111 (Mo.App.1980). Defendant's fifth point has no merit.

Other points raised by defendant have been reviewed. None has merit and no precedential purpose would be served in discussing any of them.

The judgment is affirmed.

All concur.