STATE of Missouri,
Plaintiff–Respondent,

v.

Rufus M. SUMLIN, Jr.,
Defendant–Appellant.

No. 16111.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 4, 1989.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 26, 1989.

Application to Transfer Denied
Feb. 13, 1990.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Scott E. Walter, Zwibelman, Edelman & Walter, Clayton, for defendant-appellant.

MAUS, Judge.

The jury found defendant, Rufus M. Sumlin, Jr., guilty on Count I of possession of cocaine, § 195.020, and guilty on Count II of possession of marijuana, § 195.020. As a persistent offender, he was sentenced on Count I to imprisonment for 20 years, § 195.200.1(1) and on Count II to imprisonment for 5 years, § 195.200.1(1)(b). The court ordered the sentences to run concurrently. Defendant states four points on appeal.

The evidence, viewed favorably to the verdict, *State v. Rodden,* 728 S.W.2d 212 (Mo. banc 1987), established the following background. Rufus M. Sumlin, Sr., and Ella Sumlin, his wife, owned and operated a combination grocery and package store in Sikeston. They also owned a concrete block building located within one block of the grocery and package store. The concrete block building was alternatively described as a motel or apartments. It was built in the style of a motel with ten rooms, each having a bath, and five rooms to a side. The rooms were approximately ten

feet by twelve feet. They were rented by the day, week or month. There were no signs advertising the units.

Apartment No. 4 faced the street on which the grocery and package store was located. Apartment No. 4 was the only unit that had a wrought iron door over the regular door and wrought iron bars over the window. Investigator Mark Crocker of the Sikeston Department of Public Safety had Apartment No. 4 under periodic surveillance for approximately two months before December 4, 1987. On that day, Crocker applied for a warrant to search Apartment No. 4. The application in general alleged Crocker had received information from a reliable informant that the defendant and a female named Tracy Davis had been selling cocaine from Apartment No. 4 and that, based upon accurate prior contacts, the informant was reliable. The application further alleged the informant had purchased packets of cocaine from Tracy Davis on November 13, 1987, and from the defendant on November 19, 1987, and on December 3, 1987, all in Apartment No. 4. Crocker also alleged

> "[i]n each of the instances described above the informant had been searched prior to entering the apartment and had been found by myself to have no controlled substance located on or about his person and visual contact was maintained with the informant during the times he approached the apartment door and after he again exited the apartment door until such time as the informant was searched by me at which time, in each instance, the controlled substance as referred to hereinabove was received by me."

A warrant to search Apartment No. 4 for cocaine was issued and executed on December 4, 1987.

The warrant was executed by Crocker and police officers Gee, Armour and Stokes. They were accompanied by Sheriff Bill Ferrell and Deputy Sheriff Jack Patterson. Shortly after the group arrived in the vicinity of the apartment, Tracy Davis approached Apartment No. 4. Tracy Davis was the defendant's girl friend. Tracy Davis said she had no key to the apartment and left.

Soon the defendant drove up to the building. When he was questioned, the defendant said he had no key to Apartment No. 4, but his mother did at the store. As he walked to the store with Officer Stokes, the officer asked the defendant if he had any keys on him. The defendant handed Stokes two key rings and left.

At the store, Ella Sumlin got a box of keys and accompanied the officers to Apartment No. 4. She tried to open the wrought iron door with several keys from the box. She reported that no key in the box would open the door. Officer Stokes then gave her a key given to him by the defendant. When Ella Sumlin tried that key, it turned the lock but, she quickly turned it back and said it wouldn't open the door. An officer asked that she try again, and the defendant's key was used to open the door.

The officers, accompanied by Ella Sumlin, entered the room. Shortly after the group entered, Ella Sumlin got 23 cellophane packets of cocaine from an ornamental clock in the apartment. She attempted to conceal them with a tissue. She was restrained by Officer Gee. The 23 packets of cocaine were seized. An additional packet with some cocaine in it was found in a butter churn that was located by the door. The officers also seized a small quantity of marijuana and several marijuana butts. Other items were seized such as prescription bottles, a Seal–A–Meal machine, a purse containing items of Tracy Davis', photographs and a photograph album, including photographs of defendant and Tracy Davis and the weapons seized, and three firearms.

■ The defendant's first point is that the circuit court erred in overruling his motion for disclosure of the identity of the confidential informant because such disclosure was essential to his case and the denial of such disclosure denied him the right to a fair trial and due process of law. The law concerning the disclosure of confidential informants has been succinctly summarized.

"Generally, communications made by informers to government officials are privileged and need not be disclosed. *State v. Yates*, 442 S.W.2d 21, 25 (Mo. 1969). Concepts of fundamental fairness create exceptions to this rule in some cases; however, 'the defendant bears the burden of developing a record showing the need for disclosure.' *State v. Payne*, 660 S.W.2d 24, 25 (Mo.App.1983). The determination of whether a defendant can have a fair trial without disclosure of the confidential communication depends upon the circumstances of the case and is a matter resting within the sound discretion of the trial court. *State v. Corley*, 639 S.W.2d 94, 95 (Mo.App.1982). In reviewing the trial court's ruling we must balance the relevance of disclosure and importance to the defense against the State's need for nondisclosure. *State v. Sweeney*, 701 S.W.2d 420, 426 (Mo. banc 1985). 'Disclosure is not required where testimony would be on "minor or collateral issues."' *Id.*"

*State v. Amrine*, 741 S.W.2d 665, 671 (Mo. banc 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).

The defendant does not cite the trial record to suggest any specific manner in which disclosure would have helped his case. It would be difficult, if not impossible, for him to do so. No evidence of the sales of cocaine to the confidential informant was presented to the jury. It was the defendant's position he did not live in Apartment No. 4. He presented as a witness James Erving. On direct examination, Erving testified that on December 4, 1987, he alone was living in Apartment No. 4. On cross-examination, he stated that he remembered December 10, 1987, very well. He was in jail on that day. Erving then acknowledged he was convicted of a felony in 1987 and as a result went to the penitentiary. When asked when he went to the penitentiary, he answered "I take the 5th on that." The circuit court instructed the jury to disregard Erving's testimony. The defendant does not complain of that action.

It seems to be the defendant's position that the fact the confidential informant bought cocaine from the defendant automatically required disclosure of that informant in a trial for possession of cocaine. This is not true. Cf. *State v. Sweeney*, 701 S.W.2d 420 (Mo. banc 1985); *State v. Payne*, 660 S.W.2d 24 (Mo.App.1983) and *State v. Corley*, 639 S.W.2d 94 (Mo.App. 1982). The cases upon which the defendant relies are distinguished in *State v. Hall*, 761 S.W.2d 691 (Mo.App.1988).

The facts in this case are similar to those in *State v. Arbeiter*, 664 S.W.2d 566 (Mo. App.1983) in which the court affirmed the denial of disclosure of a confidential informant. In so holding, the court said:

"We do not believe the informant's identity would have been helpful to the defense or proved the defendant's innocence. The evidence revealed the informant had purchased narcotics prior to the execution of the search warrant and on eight different occasions during the four weeks prior to the arrest. Defendant, however, was charged with possession and not sale of controlled substances."

*Id.* at 568.

A case in point is *State v. Broadus*, 616 S.W.2d 69 (Mo.App.1981). In *Broadus*, the purchase of marijuana by a confidential informant provided the basis for a search warrant. On appeal, the court held denial of disclosure was proper and said:

"Both [*State v.*] *Wandix* [, 590 S.W.2d 82 (Mo. banc 1979) supra, and *Roviaro* [, *v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)] supra, cited the issues of identity, scienter and entrapment as ones on which informant testimony may be vital. However, in the present case defendant eliminated these issues by his statements to the police that he knew marijuana to be regularly kept on the premises and that he was absconding with it when he was arrested. *Further, defendant presented no evidence at trial and does not now suggest how testimony of the informant might be helpful. Nor is it alleged that informant was a witness to the illegal possession. State v. Nafziger*, supra, 534 S.W.2d [480] at 482 [ (Mo.App.1975) ].

For these reasons the trial court did not err in finding the informant's testimony not essential to defendant's case in chief."

*Id.* at 71 (emphasis added.) Those principles stated in *Arbeiter* and *Broadus* establish the defendant's first point has no merit.

■ By his next point the defendant argues the circuit court erred in denying his motion for a directed verdict of acquittal because "the state failed to prove that appellant was in exclusive possession or joint possession with some further evidence connecting appellant with the found cocaine and marijuana." To support this point, the defendant cites bits of evidence favorable to that contention such as the following: There was no name on the door, the apartment contained the credit card of Agnes Mason, the passbook of James Erving and the prescription bottle of Tracy Davis.

As the state points out, defendant's argument ignores the standard by which the sufficiency of the evidence is to be measured. "In assessing the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary." *State v. Brown*, 660 S.W.2d 694, 698–699 (Mo. banc 1983). When so viewed, the evidence established the following. Crocker for two months observed the defendant park his vehicle in front of Apartment No. 4 and "observed him leaving, staying long periods of time inside the residence, spending the night, things of this nature." Without objection, Crocker expressed his opinion that the defendant lived there. The appliances and other contents of Apartment No. 4 indicated that someone lived there. There was found in the apartment the defendant's expired driver's license, his bottle of prescription medication, and his speeding ticket. In reference to the guns found in the apartment, the defendant went to the police station to get "his" guns. Rufus M. Sumlin, Sr., testified the defendant was in charge of the apartments. Apartment No. 4 was the only apartment equipped with a wrought iron door and window. Ella Sumlin had no key to Apartment No. 4. Tracy Davis had no key to Apartment No. 4. The defendant had the only known key to Apartment No. 4. It seems trite to say that from those facts a jury could find the defendant was in control of Apartment No. 4 and possessed the cocaine and marijuana. *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975); *State v. Brown*, 750 S.W.2d 715 (Mo.App.1988); *State v. Hall*, 687 S.W.2d 924 (Mo.App.1985).

■ The defendant's third point is that the circuit court erred in overruling the defendant's motion in limine to exclude the weapons seized in Apartment No. 4. To support the point, defendant argues the weapons were not described in the search warrant and they impermissibly tainted the mind of the jury. "We recognize that in order to preserve an issue brought in a motion *in limine*, the defendant must object to the introduction of evidence or the statement at trial, *State v. Pilchak*, 655 S.W.2d 646, 649 (Mo.App.1983)." *State v. Muthofer*, 731 S.W.2d 504, 509 (Mo.App. 1987) (emphasis in original.) The same is true of a motion to suppress. *State v. Anderson*, 698 S.W.2d 849 (Mo. banc 1985). The defendant did not object to testimony referring to the guns nor to the introduction of the guns. For that reason, his third point has no merit.

Moreover, in a pretrial proceedings the court and counsel discussed the motion to exclude evidence of the weapons. In that discussion, defense counsel mentioned that the weapons had been given to the "federal government Alcohol, Tobacco and Firearms." He asked if the state would be precluded from showing that ATF was involved. The following then occurred:

"THE COURT: Let's compromise this way, if it's acceptable: you have no problem with the chain, and we won't let anybody mention that ATF was involved.

MR. BASTIAN: Once it left the premise.

MR. SUMMERS: They are just bringing them here.

THE COURT: Is that acceptable to the State?

MR. SUMMERS: Yes, sir.

THE COURT: And that cures your problem?

MR. BASTIAN: *And I appreciate that and I hope the witnesses wouldn't volunteer 'Oh, ATF was involved.'"* (emphasis added.) There was no mention of ATF during the trial. The defendant cannot complain of evidence admitted pursuant to his agreement.

■ The last point stated in the defendant's initial brief is that the circuit court erred in overruling his motion to suppress "all non-related drug items seized in the search at Apartment Four" because that seizure exceeded the boundaries of the search warrant. As noted, a number of items were seized. The point as stated leaves the court to speculate what items the defendant challenges. Even the argument makes no reference to any specific item. For that reason, the point has no merit. *State v. Gamble,* 649 S.W.2d 573 (Mo.App.1983); *State v. Sales,* 610 S.W.2d 652 (Mo.App.1980).

Further, considering the list of exhibits, the only "non-related drug items" that defendant could be referring to are the following: the prescription bottles, the purse, the photo album, several colored photos, and the weapons. The fact the search warrant did not specifically describe those articles does not per se establish they were improperly seized.

"In the execution of a search warrant, officers may seize items not specified in an otherwise valid warrant, when its seizure is within a recognized exception to the requirement for a search warrant. *State v. Clark,* 552 S.W.2d 256, 260 (Mo. App.1977). The plain view exception permits an officer to seize items without a warrant if: '(1) the evidence is observed in plain view while the officer is in a place where he has a right to be; (2) the discovery of the evidence is inadvertent; and (3) it is apparent to the officer that he has evidence before him.' *State v. Holt,* 695 S.W.2d 474, 477 (Mo.App.1985). It is not necessary that recognition of the objects as evidence be made beyond a reasonable doubt, but only that the recognition satisfy a probable cause requirement. *Clark,* 552 S.W.2d at 261."

*State v. Luleff,* 729 S.W.2d 530, 534 (Mo. App.1987).

The facts and reasonable inferences therefrom are to be considered favorably to the order of the circuit court overruling the motion to suppress. *State v. Blair,* 691 S.W.2d 259 (Mo. banc 1985), cert. denied, 474 U.S. 1049, 106 S.Ct. 784, 88 L.Ed.2d 762 (1986). The evidence supports a determination the items in question were in plain view and were properly seized under the above exception and properly admitted in evidence. The appellant's fourth point has no merit.

■ By his reply brief, the defendant contends it was a manifest injustice for the court to admit "into evidence non-related drug items, including testimony of police officers that a key taken from appellant which opened the searched premises because the evidence resulted from an illegal search and seizure of defendant's person not allowable by warrant or by exception to the warrant requirement." This argument only serves to emphasize the significance of the defendant's possession of the key that opened Apartment No. 4. An appellant may not by his principal brief present an objection not presented to the trial court. *State v. Anderson,* supra. He certainly cannot do so by a reply brief. *State v. Davis,* 675 S.W.2d 410 (Mo.App.1984).

Moreover, the argument in the reply brief misstates the record. The defendant's principal brief contains the following statement of facts. "Investigator Bill Stokes asked the defendant if he had any keys on him.... Rufus M. Sumlin, Jr., then handed Investigator Stokes two key rings ... containing six keys ... and then departed." This statement substantially reflects the transcript of the trial. Those facts establish that the use of the key to open the wrought iron door does not constitute a manifest injustice.

The judgment is affirmed.

FLANIGAN, P.J., and HOGAN, J., concur.