**STATE of Missouri, Plaintiff–Respondent,**

v.

**Julie Drake WILLERS, Defendant–Appellant.**

**No. 16672.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 14, 1990.

James R. Spradling, Carthage, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

A jury found defendant Julie Drake Willers guilty of felony possession of cocaine (Count I), § 195.020; [1] felony possession of methamphetamine (Count II), § 195.020; and misdemeanor possession of marijuana (Count III), § 195.020. In keeping with the jury recommendation, defendant was sentenced to 6 months on Count I, 6 months on Count II and 1 year on Count III, plus a $1,000.00 fine. The trial court ordered the sentences to run concurrently. Defendant appeals.

Defendant's first point is that the trial court erred in denying her motions for directed verdict of acquittal because the "state's evidence ... failed to show that ... defendant had knowledge of the nature and presence of a controlled substance or that she had a conscious control of any controlled substances, either actually or constructively." The thrust of defendant's argument is that the State failed to establish a nexus between her and the cocaine, methamphetamine, and marijuana found in an apartment at 624 North Cedar, Nevada, Missouri.

The standard by which the sufficiency of the evidence is to be measured is that an appellate court "must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary." *State v. Brown*, 660 S.W.2d 694, 699 (Mo.banc 1983); *State v. Anderson*, 785 S.W.2d 299, 300 (Mo.App.1990).

When so viewed, the evidence established the following. Detective Norman Turner searched an apartment at 624 North Cedar, Nevada, Missouri, on October 27, 1987, pursuant to a search warrant. The officer was admitted to the apartment by Libby Prier, a person known by the officer to be living elsewhere at that time. Libby testified, "They [officers] asked me something to the effect of how did I get in, and I said, 'Julie,' I was paranoid, and I didn't know what to think, I was there by myself, I didn't know what they would think."

Q. [To Libby]: Did you testify earlier that you had told law enforcement that you had seen Julie there earlier that night?

\* \* \* \* \* \*

A. Yes.

Libby came to the "house of the defendant" just after midnight. The search was executed at 2:18 a.m. Libby went to the apartment thinking the defendant would be there. She wanted to hide from her spouse with whom she was fighting. Libby took no marijuana, methamphetamine, or cocaine into the apartment.

In executing the search warrant at the apartment, the officer found and seized: (a) from the kitchen cabinet drawers: a spoon with a white substance (tested to be cocaine), plant material (tested later to be marijuana), and some marijuana roaches; (b) from the kitchen table (or nearby the table): two ashtrays containing roaches, pipe screen, a bag of plant material, a small plastic bag which contained a white substance (tested later to be methamphetamine), a mirror which contained white powdery residue (tested later as being cocaine), a bag of plant material found inside a guitar (tested later to be marijuana), and hand-rolled cigarette butts (tested later to be marijuana); and (c) from a photo album in the bedroom of the apartment, some plant material (tested later to be marijuana).

Also seized during the search were: (1) five marijuana roaches; (2) a prescription bottle of penicillin for "Julie Drake"; and (3) a photo album containing pictures of the defendant Julie Drake and a person the

---

1. References to statutes are to RSMo 1986, except where otherwise indicated.

officer believed was Vickie Drake. The photo album also contained a photograph of Beverly Willers and the defendant in which a roach clip with a roach in it was being held up to defendant's mouth; the photo having the caption, "Bev and me getting stoned."

During the search, the officer found no letters, magazines, or prescription bottles with anyone's name on it but the defendant's. There was no men's clothing seen in the apartment. Detective Turner testified, without objection, that there were no "other signs of anyone else living there besides the Defendant."

The apartment manager rented the unit at 624 North Cedar to defendant and the rent was paid in defendant's name on August 1, 1987, August 31, 1987, October 5, 1987, and October 15, 1987. Defendant made application for utility hookup for 624 North Cedar on July 30, 1987. No other name was on the application. The service continued in the defendant's name until the service was canceled by the voluntary act of the occupant (as opposed to disconnection for non-payment) on November 3, 1987. The apartment manager received the key for the apartment through the mail on October 30, 1987. Finally, a traffic summons issued November 5, 1987, signed by the defendant, listed 624 North Cedar as defendant's place of residence.

■ To sustain a conviction for a controlled substance under § 195.020, the State must prove the defendant "knowingly and intentionally" possessed the proscribed substances and that the defendant was aware of the presence and nature of the substances in question. *State v. Thomas,* 737 S.W.2d 247, 249 (Mo.App.1987); *State v. Norwood,* 721 S.W.2d 175, 178 (Mo.App.1986). Both possession and knowledge of the nature of the controlled substances may be proven by circumstantial evidence. *State v. Gulley,* 776 S.W.2d 492, 494 (Mo.App.1989); *State v. Brown,* 750 S.W.2d 715, 716 (Mo.App.1988). Here, defendant questions the sufficiency of the evidence to prove a conscious possession of the controlled substances because of her claim that she was not in exclusive control

of the apartment, especially given the fact that Libby was present when the search was made and defendant was not present. However, actual possession is not necessary to sustain a conviction for possession of a controlled substance. *State v. Pacchetti,* 729 S.W.2d 621, 628 (Mo.App.1987), *cert. denied,* 484 U.S. 930, 108 S.Ct. 299, 98 L.Ed.2d 258 (1987).

■ Where actual possession is not shown, constructive possession will suffice even where joint control exists, so long as other facts buttress an inference that defendant had knowledge of the presence of the controlled substances. *State v. Norwood, supra,* at 178; *State v. Dethrow,* 674 S.W.2d 546, 550 (Mo.App.1984). Where there is joint control of the premises, some further evidence is necessary to connect the accused with the drugs. *State v. Wiley,* 522 S.W.2d 281, 292 (Mo.banc 1975); *State v. Mischanko,* 743 S.W.2d 867, 868 (Mo.App.1987). That further evidence may include the presence of large quantities of a controlled substance if consistent with the totality of the circumstances. *State v. Thomas, supra,* at 249–50; *State v. Mischanko, supra,* at 868–69.

In this instance, the quantities of substances found were not great, but the marijuana was found in numerous locations, giving rise to the inference that there had been more than casual use by someone visiting or temporarily staying in the home. *State v. Gulley, supra,* at 494. Illustrative of this was the fact that marijuana was found in kitchen cabinet drawers, on the kitchen table, in the guitar that was in the kitchen-living room area, and in the bedroom, in more than one location, including some marijuana in the photo album (the photo album containing pictures of defendant with marijuana roaches and pictures having captions indicating that some of the photographs belonged to defendant.) *See State v. Gulley, supra,* at 494.

■ Other incriminating evidence was defendant's access to the area in which the substances were found. *State v. Thomas, supra,* at 249; *State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App.1984). Routine access to the area containing the proscribed

substances supports a factual finding that defendant consciously possessed the substances. *State v. Gulley, supra,* at 494. Here, defendant rented the apartment until it was searched and she was charged. Then, the key was mailed back to the landlord. The utilities were hooked up in defendant's name and so remained until she was charged. Then, they were voluntarily disconnected. Photo albums containing defendant's pictures with captions such as "Bev and me getting stoned" were found in the bedroom. No men's clothing, letters, magazines or other materials were found by the officer which would indicate that the apartment belonged to anyone other than the defendant. Significantly, a traffic summons signed by the defendant November 5, 1987, listed 624 North Cedar as her address (rather than Steve Willers' home which defense witnesses contended defendant had moved into).

While she tried to recant her statement, the person who admitted the officer to the apartment (Libby) stated that she had seen defendant earlier in the evening, and that defendant had allowed her to enter the apartment. Libby testified that she had been drinking earlier in the evening and "doing [v]aliums" but had brought no marijuana, cocaine or methamphetamines to the apartment. Defendant's prescription bottle of medicine and her photo album were found in the apartment. The officer testified, without objection, that he believed no one else was living at the apartment other than defendant. Nine days after the search of defendant's apartment, she listed 624 North Cedar on a traffic summons as being her place of residence. *See State v. Sumlin,* 782 S.W.2d 749 (Mo.App.1989), where this court sustained a conviction against a challenge that the evidence was insufficient on facts significantly similar to the facts in this case.

Defendant did offer evidence that she had moved out of the apartment on October 15, 1987, that she was gone with her boyfriend on a truck at the time the search warrant was executed, and that others had access to this apartment. However, this evidence was for the trier of fact to consider. *State v. Kerfoot, supra,* at 662. Evi-

dence unfavorable to the State is not considered. *State v. Kuhrts,* 571 S.W.2d 709, 716 (Mo.App.1978); *State v. Poor,* 533 S.W.2d 245 (Mo.App.1976). This court finds there was sufficient evidence to prove a conscious and knowing possession of the controlled substances by defendant. Point one is ruled against defendant.

In point two, defendant claims error in the admission into evidence of a spoon and mirror which had traces of cocaine on them and a small zip-lock bag having traces of methamphetamine in it. The alleged error was that after washing for testing by the State's expert, there was no usable trace for testing by defendant's expert, thereby denying defendant's rights to due process and the right to confront and rebut the evidence against her. Defendant also claims that the amounts of controlled substances were so infinitesimal as to be non-criminal. The State was not required to prove that the quantities of controlled substances found in exhibits 3, 9 and 12 (two cocaine and one methamphetamine) were sufficient to have an exciting effect on the central nervous system. *State v. Jefferson,* 391 S.W.2d 885, 890 (Mo.1965).

[T]he possession of any amount, even a modicum, of amphetamine is within the prohibition of the statute. This can be the only reasonable interpretation in view of evil which the general assembly seeks to abate.

*State v. Jefferson, supra,* at 890. The gravamen of the offenses here charged is possession of the controlled substances, and the State did not have to prove that defendant intended to make some other use of the drugs. *State v. Virdure,* 371 S.W.2d 196, 202 (Mo.1963). The State did not have the burden of proving that the quantity of controlled substances was sufficient to have an exciting effect on defendant or some other person. *State v. Young,* 427 S.W.2d 510, 513 (Mo.1968). The chemist testified, without objection or contradiction, that there were sufficient quantities of the materials in or on exhibits 3, 9 and 12 to determine that the sub-

stances were cocaine and methamphetamine. That is all that is required for the State to meet its burden of proof. *State v. Kuhrts, supra,* at 715.

▉ Without citing any authority, defendant claims that it was error to admit exhibits 3, 9 and 12 (the containers which had held the cocaine tested and the methamphetamine tested) because after testing by the State, there were no amounts available for inspection and testing by defendant or her experts. That contention is without merit absent a showing that the State acted in bad faith in failing to preserve useful evidence for the defendant. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). No such claim was here made by defendant.

In *State v. Lowrance,* 619 S.W.2d 354 (Mo.App.1981), the defendant contended the trial court erred in overruling his objection to testimony of the police criminologist that the contents of a hypodermic syringe were cocaine because the contents were consumed by the testing procedure. He claimed denial of due process and his right of confrontation because he could not have the substance independently tested. The court rejected such contentions, saying:

> Defendant does not in any way dispute the findings of the state's criminologist. Nor does he claim that the opportunity to test the substance was denied him after proper request. The record reveals that no request to test the substance was made. We find no Missouri case on point, but see *People v. Marich,* 201 Cal. App.2d 462, 19 Cal.Rptr. 909 (1962) for a resolution similar to that which we reach here. Clearly, it was not error to admit the testimony of the criminologist.

*State v. Lowrance, supra,* at 356.

This court notes defendant here never requested the right to test the residue and materials on the spoon, mirror, or zip-lock bag. Defendant offered no evidence regarding the residue. Defendant does not dispute the findings of the State's expert. In *State v. Sprout,* 365 S.W.2d 572 (Mo. 1963), defendant claimed that an officer destroyed pieces of cloth cut and blood taken from defendant's trousers to make blood-grouping tests, thereby leaving defendant unable to defend against that officer's testimony. Citing evidence that the State used only an amount of material sufficient to make the testing, the court rejected defendant's claim of prejudicial error in the admission of the officer's testimony about the test results. *State v. Sprout, supra,* at 575–76.

Finally, an exhaustive review of the consequence of destructive testing of evidence on a defendant's constitutional right of due process and confrontation was made by this court in *Hanson v. State,* 684 S.W.2d 337 (Mo.App.1984). In that case, defendant was given no notice that a test was to be made of blood from the defendant's knife. The testing matched the specimen to the blood of the victim, but the testing destroyed the specimen. In rejecting the defendant's claim that admission of the results of the test denied him his constitutional right of confrontation, the court said:

> *State v. Carlson* [267 N.W.2d 170 (Minn.1978) ] suggests where evidence might be consumed in testing, it is good practice to notify the defendant for his observation. Although "[i]t is generally held by the cases that the absence of the accused during the making of an experiment does not render inadmissible testimony of such experiment." Annot., Test—Absence of Accused—Admissibility, 17 A.L.R.2d 1078 (1951).... *State v. Carlson, supra,* further suggests that an objection to such evidence will be considered only when a defendant has laid a foundation therefore. First, a defendant must by motion seek a sample of the specimen for testing. See *State v. Lowrance, supra.* The state must then produce a testable sample or establish its good faith in the absence thereof. In the absence of such production, and upon an adverse determination on the issue of good faith, on proper objection or motion, the trial court may consider the admissibility of the state's test evidence.

*Hanson v. State, supra,* at 343.

In this case, defendant did not seek a sample of the specimen for testing. Thus, the State was not called upon to demon-

strate its good faith. The defendant offered no evidence that the State acted in bad faith in using the sample for testing. In fact, defendant never sought the specimen to do testing. Unless defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. *Arizona v. Youngblood, supra; State v. Petterson,* 780 S.W.2d 675, 679 (Mo.App.1989). Based upon the above, defendant's last point is denied.

The judgment is affirmed.

FLANIGAN, C.J., and HOGAN, J., concur.