**STATE of Missouri, Plaintiff–Respondent,**

v.

**Deborah MAYABB, Defendant–Appellant.**

**No. 23569.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 2001.

Motion for Rehearing or Transfer
Denied April 19, 2001.

Application to Transfer Denied
May 29, 2001.

Kent Denzel, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Deborah Mayabb ("Defendant") was charged by amended information with possession of a controlled substance in violation of Section 195.202.[1] A jury found Defendant guilty, and she was sentenced

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

to five years imprisonment. Defendant appeals.

■ As Defendant contests the sufficiency of the evidence supporting her conviction, appellate "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *Id.* Viewed in this light, the evidence most favorable to the verdict shows:

In January 1999, Defendant lived in an apartment with her ten-year old daughter, Nicole, and her fifteen-year old daughter, Shannon. Shannon had just moved in with Defendant after having lived in various foster homes. Shannon had been "kicked out" of the apartment on numerous occasions by Defendant as they constantly fought over Shannon having to take care of Nicole.

On January 23, 1999, Shannon knocked on Defendant's bedroom door to inform her that Nicole was hungry. Defendant had methamphetamine in her room, and she told Shannon if she did not take care of Nicole that night and cook her dinner that Shannon would have to leave the house. They argued about Shannon having to take care of Nicole and Shannon decided to leave the house. Before she left, Shannon saw Defendant in her bedroom with two men. Defendant had an aluminum foil strip in her hand with methamphetamine on it, a straw or pen in her mouth, and a lighter.

Shannon went to her aunt's home, and her aunt advised her that she should go to the police station and report the incident. Shannon and her aunt went to the police station, and reported that Defendant had methamphetamine in her bedroom and that Defendant had people coming from Kentucky bringing her anhydrous.

Officer Richard Couch ("Officer Couch") of the Southeast Missouri Drug Task Force interviewed Shannon and her aunt. Shannon told him that Defendant had kicked her out of the house and that Defendant had been using methamphetamine that evening around 7:00 p.m. Shannon also told Officer Couch that Defendant had used and sold methamphetamine in the past and did so to support the family. Shannon described a shoebox containing a metal tin with drug paraphernalia that was in Defendant's bedroom underneath the bed.

Officer Couch obtained a search warrant, and at approximately midnight on January 24, 1999, he and several other officers went to Defendant's home to execute the warrant. They knocked on the door and were told to "come in." Defendant and two other individuals were in the apartment. Defendant was placed under arrest for endangering the welfare of children, and she was searched. Officer Couch retrieved an ink barrel, which had white residue on it, from Defendant's pocket.

Officer Couch then searched Defendant's bedroom and found a shoebox containing a red tin box. Inside the tin box was a small black plastic box that had white residue inside it. The box also contained an ink barrel, two plastic straws, a small glass mirror, a cigarette lighter, two cut-off corners of a plastic bag, four pieces of aluminum foil, and an art knife. Officer Couch observed white residue on the ink barrel, straws, mirror, cigarette lighter, plastic bag corners, and knife. He per-

formed field tests on the black plastic box, the mirror, and the art knife and found that they tested positive for methamphetamine.

David Nanneman ("Nanneman"), a criminalist for the Missouri State Highway Patrol, was assigned to test items found in Defendant's apartment. Nanneman observed residue on the ink barrel found on Defendant, but did not see enough that could be measured, so he rinsed it with methanol and found that it contained methamphetamine residue. He could not see observable residue in the ink barrel or plastic straws found in the tin, so he rinsed them and discovered that they also contained methamphetamine residue. He found an observable but unmeasurable amount of residue on the art knife and determined that the residue contained methamphetamine.

At the close of the State's case, Defendant made a motion for judgment of acquittal, which was overruled. Defendant did not present any evidence at trial. The jury found Defendant guilty, and on March 23, 2000, the trial court sentenced Defendant to five years imprisonment. Defendant appeals.

■ In her first point on appeal, Defendant asserts that the trial court erred in overruling her motion for judgment of acquittal at the close of the State's case, and in accepting the jury's verdict and sentencing her on the charge of possession of a controlled substance in that the State failed to produce sufficient evidence to allow a jury to reach "a subjective state of near certitude that [Defendant] knowingly possessed methamphetamine." Defendant argues that the State's evidence "showed only that there was unweighable residue of methamphetamine on certain items found in [Defendant's] house, which is an indication only of past use of methamphetamine, not of present possession."

■ To sustain a conviction for possession, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance. *State v. Moore*, 930 S.W.2d 464, 467 (Mo.App. E.D.1996).

In support of her argument that there was insufficient evidence to demonstrate her knowing and intentional possession of methamphetamine, Defendant cites *State v. Baker*, 912 S.W.2d 541 (Mo.App. W.D. 1995), and *State v. Polk*, 529 S.W.2d 490 (Mo.App.St.L.1975).

In *Baker*, the defendant was charged with possession of cocaine when a patdown search led to the discovery of a crack pipe. No cocaine was visible on the pipe, but a chemical analysis revealed that a burnt residue on the pipe included trace amounts of cocaine. 912 S.W.2d at 542–43. The *Baker* court concluded that the "mere presence of such a small amount of burnt residue of a drug on an item such as a pipe does not constitute possession" as the defendant could not have known of the presence of the cocaine because no recognizable, visible traces remained after the drug had been burned. *Id.* at 546.

In *Polk*, drug paraphernalia and pink capsules containing trace amounts of heroin were discovered in a "male jewelry box" in the bedroom closet of an apartment. 529 S.W.2d at 491. The defendant was found guilty of possession of heroin. *Id.* at 490. The court reversed, holding that there was insufficient evidence to demonstrate the defendant's knowing, intentional, and conscious possession of the controlled substance. *Id.* at 494–95. The court stated that the only evidence to support the defendant's conviction was an amount of heroin "which [was] so minuscule as to constitute a mere 'trace' and which [was] immeasurable and consumed

in the performance of the basic test necessary for identification of the substance." *Id.* at 494. The court further noted that there was no direct evidence that the defendant had actual possession of the heroin as the heroin was not found on or about his person, and that three other occupants shared the apartment with the defendant and that the jewelry box may have belonged to one of them. *Id.* at 492. The *Polk* court concluded that in order to find the Defendant guilty, it would have to "pile [ ] one inference upon another and th[at] [was] not permitted." *Id.* at 493.

As Defendant acknowledges in her argument, both *Baker* and *Polk* have been distinguished by cases such as *State v. Hill*, 929 S.W.2d 258 (Mo.App. E.D.1996). In *Hill*, a visible "trace" amount of cocaine was found caked inside a straw which, along with a razor blade, was inside of a compact in plain view in the defendant's bedroom. *Id.* at 262. The court noted that "*Polk* and *Baker* both held that insufficient evidence was presented to sustain a conviction for possession of a controlled substance when the only evidence presented to support the conviction was a 'trace' amount of the controlled substance. However, both of these opinions expressly limited their holdings to the specific facts of the case, thus recognizing that a person can know of the presence of mere 'trace' amounts." *Id.* (citations omitted). The *Hill* court distinguished the facts in its case from those in *Polk* and *Baker* as the cocaine found caked inside the straw was visible, and affirmed Defendant's conviction for possession. *Id.* at 262.

Other cases have also held that one can knowingly possess trace amounts of drugs that could be classified as residue. For instance, in *State v. Smith*, 808 S.W.2d 24, 26 (Mo.App. E.D.1991), the court held that there was sufficient evidence to convict the defendant of possession of cocaine given the fact that a syringe containing visible cocaine residue was found in the defendant's front shirt pocket, and that the defendant had told authorities that he had a "hit" of cocaine earlier in the day and that there was nothing left in the syringe. *See also State v. Spraggins*, 839 S.W.2d 599, 603–04 (Mo.App. E.D.1992) (residue of cocaine and heroin in the bottom of aluminum can); *State v. Patterson*, 824 S.W.2d 117, 122–23 (Mo.App. E.D.1992) (cigarette with traces of cocaine on it); *State v. Willers*, 794 S.W.2d 315, 319–20 (Mo.App. S.D. 1990) (spoon and mirror had traces of cocaine on them); *State v. Harrington*, 679 S.W.2d 906, 908 (Mo.App. S.D.1984) (marijuana residue found in coat pocket).

In the instant case, there was sufficient evidence presented to establish Defendant's knowing and intentional possession of methamphetamine. A visible trace of methamphetamine was found on the ink barrel retrieved from Defendant's pocket. In addition, two straws, an ink barrel, two plastic bag corners, a mirror, an art knife and a cigarette lighter were found in Defendant's bedroom, an area over which she exercised control, and the methamphetamine residue on these items was visible to Officer Couch. Further, the discovery of the methamphetamine residue corroborated Shannon's testimony that methamphetamine was present in Defendant's home and the items found matched Shannon's description of the drug paraphernalia. *See State v. Moore*, 930 S.W.2d at 467, where the court held that there was sufficient evidence to support the defendant's conviction for possession based on the traces of cocaine found on the table and an eyewitness's testimony that a paper bag containing cocaine had been present in the apartment earlier in the day. Consequently, the trial court did not err in overruling Defendant's motion for acquittal and in sentencing her for possession of a con-

trolled substance. Defendant's first point must therefore be denied.

■ In her second point, Defendant contends that the trial court erred in refusing her "request for a limiting instruction to inform the jury that it was not to consider evidence of [O]fficer Couch's investigation for the truth of the matters asserted." Defendant argues that Officer Couch's testimony that "Shannon had accused [Defendant] of possessing, using, and selling methamphetamine should not be taken for the truth of those allegations but only for the purpose of explaining [Officer Couch's] subsequent conduct."

At trial, during the State's direct examination of Officer Couch, the following exchange took place:

> Q. Could you tell the ladies and gentleman of the court—or, I'm sorry—the jury here, exactly what [Shannon] informed you regarding what was going on at [Defendant's] residence on January 23 and 24, 1999?
>
> A. She had stated that [Defendant] had kicked her out of the house because [Defendant] had been using methamphetamines and that there was a—some items in the house that was used to—or used to use methamphetamines, and there was possible—possible some meth in the house. She stated that, in the past, that [Defendant] had used and sold methamphetamines and had told [Shannon] and the other children that she sold methamphetamines to support the family, to support the children.
>
> She described a shoebox that should be in the bedroom underneath the bed, which would be [Defendant's] bedroom, she stated, that contained a metal tin. She said in that tin is [sic] items used to administer methamphetamines, which we call paraphernalia.

> [DEFENSE COUNSEL]: Your Honor, I'd object to the narrative form on the answer.
>
> THE COURT: As to the narrative form.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.

> \* \* \* \* \* \*

> Q. What did [Shannon] also tell you anything about, any past activity at the house at that present time on that night?
>
> A. She stated that—
>
> [DEFENSE COUNSEL]: Your Honor, I would object as to the relevance for purposes right here.
>
> THE COURT: The objection is overruled. You may proceed.
>
> [OFFICER COUCH]: She stated she had seen the container, the metal tin, and saw [Defendant] using methamphetamines on the 23rd at 7:00 p.m., which was the day before. She had also stated that they—she had witnessed [Defendant] using it in the house. . . .

Officer Couch then testified about the conflicts between Shannon and Defendant and how he compiled the information Shannon gave him to obtain a search warrant. Defense counsel then asked to approach the bench and the following exchange occurred:

> [DEFENSE COUNSEL]: Judge, I was going to ask the Court if the Court, at this point, can instruct the jury to consider what Officer Couch has testified to as far as his investigation and not for the truth or believability of his actions. That, in fact, is hearsay and they should not take that for the truth, I mean, just for the subsequent conduct of Officer Couch.
>
> THE COURT: Are you asking me to instruct the jury of that?

[DEFENSE COUNSEL]: If you could just to least (indiscernible).

THE COURT: All right.

[THE STATE]: Well, Your Honor, I object (indiscernible).

THE COURT: Go ahead.

(Proceedings returned to open court.) The State then returned to questioning Officer Couch about the execution of the search warrant.[2]

■ "A point on appeal regarding admissibility of evidence must be based on the theory of objection made at trial." *State v. Jordan,* 978 S.W.2d 36, 40 (Mo. App. E.D.1998). In the instant case, defense counsel made two objections to Officer Couch's testimony. One objection was based on the response being narrative, and the other was based on relevance. There was no objection to the testimony being hearsay. It was only after Officer Couch's testimony turned to the execution of the search warrant that defense counsel requested a limiting instruction based on the testimony being hearsay.

■ The admission of hearsay evidence is not plain error if no objection is made at trial to its admission. *State v. Smith,* 989 S.W.2d 223, 226 (Mo.App. E.D. 1999); *State v. Evans,* 895 S.W.2d 637, 638 (Mo.App. E.D.1995). Additionally, hearsay evidence "which comes into the record without objection may be considered by the jury." *State v. Evans,* 992 S.W.2d 275, 290 (Mo.App. S.D.1999). As Defendant did not object to any of Officer Couch's testimony on the grounds of hearsay, his testimony was not excludable on those grounds and could be considered by the jury. Consequently, the trial court did not err in failing to grant a limiting instruction.

■ Furthermore, even if the trial court had erred, Defendant fails to demonstrate that she was prejudiced. "Prejudice will not be found from the admission of hearsay testimony where the declarant was also a witness at trial, testified on the same matter, and was subject to cross-examination." *State v. Hamilton,* 892 S.W.2d 371, 378 (Mo.App. E.D.1995). Here, Shannon testified that she saw Defendant using methamphetamine at approximately 7 p.m. on January 23, 1999. Shannon also testified that she witnessed numerous individuals coming and going from Defendant's home, and that she had told Officer Couch about individuals coming from Kentucky to deliver anhydrous and about the shoebox containing the metal tin with drug paraphernalia. On cross-examination, defense counsel had the opportunity to question Shannon about her allegations regarding Defendant. Hence, Defendant suffered no prejudice from the trial court's failure to give a limiting instruction. This point is denied.

The judgment of the trial court is affirmed.

PREWITT, J., and BARNEY, C.J., concur.

---

2. Although it is not clear from the transcript because portions of the exchange are marked "indiscernible," the record does not reflect that the trial court so instructed the jury.